## SCHULTZ v. GRAESSLE.

Circuit Court, Lake County.

August 2, 1954.

T. C. Cork, Clermont, for plaintiff.

J. W. and W. B. Hunter, Tavares, for defendant.

T. G. FUTCH, Circuit Judge.

This is an action to set aside certain deeds purporting to convey title to two separate tracts of land in this county. The grounds urged for setting aside the conveyances (as to both tracts) are misrepresentation, fraud and deception alleged to have been prac-

ticed by the husband, Frank Graessle, now deceased (hereinafter referred to as "Frank") upon his wife, Pauline Meincke Graessle, also deceased (hereinafter referred to as "Pauline"), and the further ground (as to one 10 acre tract) that it was Pauline's homestead because she was the head of a family. The present litigation is between Minnie Bertha Schultz, Pauline's daughter and only child, and Vernon Graessle, Frank's son.

The following material facts appear to be undisputed—William C. Meincke (Pauline's first husband) during his lifetime acquired title to two tracts of land each containing 10 acres, one in section 13, township 21 south, range 25 east, the other in section 27, township 20 south, range 25 east. He acquired the land in section 13 on December 26, 1922 by deed from Orange Belt Securities Co. appearing on page 16 of the abstract presented in evidence here. He acquired the land in section 27 from W. H. Hall by deed dated April 13, 1921 and shown on page 11 of the abstract.

In October 1931 he conveyed both tracts to one Frank Bocan, who reconveyed them to Pauline, his wife. These deeds appear at pages 13, 15, 23 and 24 of the abstract.

Early in 1934 Meincke and his wife Pauline started the erection of a home on the property in section 27 but he died before the home had been completed and occupied by them. A short time thereafter Pauline moved into the home where she lived with her daughter (the plaintiff in this action) and her daughter's husband—until she married Frank on July 25, 1936.

On January 21, 1938 Pauline and Frank conveyed both tracts to Lake County Land Owners' Association, a Florida corporation (hereinafter referred to as "the association") and a day later the association reconveyed the land to Pauline and Frank. These instruments appear on pages 48 and 49 of the abstract. There was no material consideration for either of the conveyances.

Pauline died on December 29, 1945, leaving Frank surviving. On June 16, 1947 Frank conveyed the land to Vernon Graessle, as trustee under the provisions of a private trust agreement. This deed appears at page 69 of the abstract. Frank died in 1951 leaving Vernon Graessle (the defendant) in possession of all the property involved in this action under the terms of the trust agreement.

Plaintiff commenced this action in January 1952 to set aside the conveyances (as a result of which the property was transferred to Pauline and Frank as tenants by the entireties) on the ground of fraud, overreaching, undue influence and deception. On May 4, 1953 plaintiff filed an amended complaint wherein by her second cause of action (abandoned at the trial) she set up her homestead

rights as a lineal descendant of William C. Meincke, and wherein by her third cause of action she set up her homestead rights as a lineal descendant of her mother Pauline (which is still in issue before the court).

There are three main questions raised by the pleadings and testimony—1. Were the deeds by Pauline to the association and by it to Pauline and Frank, her husband, as tenants by the entireties, procured by misrepresentation, fraud and deception, and therefore void? 2. Was Pauline, at and before the time of her death, the head of a family within the meaning of the constitution and laws of Florida pertaining to homesteads? 3. Was the attempted transfer of the homestead between Pauline and Frank valid as to the homestead?

With respect to question 1 we find from the evidence that there was no consideration passing from the association to Pauline for the conveyance by Pauline to it on January 21, 1938, nor was there any consideration for its conveyance to Pauline and Frank. The superficial object and purpose of these two conveyances, of course, was to vest title in Mr. and Mrs. Graessle.

There is no showing or pretense on the part of anyone that Frank paid Pauline anything whatsoever for his alleged interest in the land which he sought to have vested in him by virtue of the two conveyances. While the result of the conveyances was to create an apparent estate by the entireties it is significant that no mention of the purpose to be accomplished is made in either conveyance. The evidence shows that at that time Frank had an income of less than $40 a month, had debts which he owed in Chicago, and that he remained in this financial condition for nearly two years after his marriage to Pauline in 1936. In 1938 he sold property in Chicago to his two sons who apparently made a down payment of a thousand dollars for his benefit. The record is not clear from this point but it indicates that at least a part if not all of this thousand dollars was used for the payment of his debts in Chicago. The two sons became obligated to pay and apparently did pay him $40 monthly over a period of ten years as a balance on the purchase price of the Chicago property. This $40 a month was all the income he had. The property here involved consists of two 10 acre tracts of citrus groves near Howey, which were financed and maintained from the crops produced and by money borrowed each year from government lending agencies.

The evidence further shows that it was not Pauline's intention to deprive her daughter, Minnie Bertha Schultz, of all interest in this property and that she for some reason was fearful of letting Frank know she was communicating with her daughter after the

execution of the deeds to and from the association. To me the record shows that the idea of so conveying the property was Frank's brain child, that he knew exactly what he was trying to accomplish, that his sole purpose was to obtain, without consideration, and without his wife's knowledge, full title thereto for his benefit and the benefit of his children—to the exclusion of Minnie Bertha Schultz, his wife's only child and rightful heir. Question 1 is accordingly answered in the affirmative.

From what has been said it is clear that Pauline was the head of a family under provisions of our constitution and laws. As such she was entitled to all the benefits of a homestead in the property located in section 27. The conveyance of this property (in addition to the reason stated above) was void as against the rights of Minnie Bertha Schultz because of its homestead character. It follows that question 2 must be answered in the affirmative and question 3 in the negative.

Frank's transactions with his wife Pauline are bedecked with badges of fraud, deceit and misrepresentation from beginning to end. If every dollar of income he was shown to have received before his wife's death had gone into the property it would not even have paid for its maintenance, to say nothing of its value.

It follows that a decree must be entered in accordance with the prayer of the bill of complaint. No accounting for the use of the property while it has been in defendant's possession will be ordered because there is no evidence in the record as to the amount that might be involved and it is doubtful whether an accounting would accomplish anything of benefit to plaintiff, it would in all probability be a useless gesture and a waste of time. Plaintiff's solicitor is directed to prepare an appropriate decree in accordance herewith for entry by the court.